JACK et al. v. STATE ex rel. CUNNINGHAM et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 316.

APPEALABLE ORDERS—INTERLOCUTORY ORDERS GRANTING INJUNCTIONS.

Appellees by leave of court intervened in a pending cause, and on their petition an order was made conditioned upon their filing a bond restraining the receiver of the court from carrying out a former order requiring him to remove the rails from a short line of railroad. Appellees having failed to give the bond, the receiver proceeded to carry out the former order by dismantling the road, selling the materials, and distributing the proceeds between the parties to the suit, who were the owners of the road. Subsequently a demurrer to appellees' petition was overruled, and an order was entered permitting them to intervene, and to move for a rehearing or review of all former orders made in the cause; suspending the order for dismantling the road; requiring the receiver to retain all money in his hands; and requiring the original parties to give bond to comply with any further order in regard to the funds already paid them by the receiver. *Held*, that such order did not come within the provisions of Act Feb. 18, 1895 (28 Stat. 666), allowing appeals from interlocutory orders granting injunctions, and was not appealable.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This case was begun April 27, 1897, in the United States circuit court for the district of South Carolina, by a bill in equity filed by D. F. Jack, a citizen of Georgia, against James T. Williams and H. C. Beattie, citizens of South Carolina. The bill asked for the sale and partition of certain property formerly owned by the Carolina, Knoxville & Western Railway Company. From the bill and other pleadings it appears that the Carolina, Knoxville & Western Railway Company was chartered by South Carolina in 1887 to construct and operate a railroad of considerable length from Hamburg, in South Carolina, to Knoxville, Tenn. The construction was begun in 1888, and some work was done at various points along the line, but the company became bankrupt and unable to continue the construction, so that only a section of 12 miles was completed, extending northward from Greenville in South Carolina. It appears that a mortgage to secure a very large amount of bonds had been executed by the company in 1888, and, default having been made, a bill to foreclose had been filed in the same United States circuit court for the district of South Carolina, and the said defendant H. C. Beattie had been appointed receiver; that receiver's certificates were thereupon issued to complete the road three miles further, to Marietta, S. C.; that the receiver then operated the 15 miles of road until a foreclosure sale, on July 23, 1896. It appeared that the operation by the receiver resulted in the road barely paying its running expenses, without any compensation to the receiver, and without paying anything upon the receiver's certificates or the bonded debt. After many efforts under the foreclosure decree to sell the mortgaged property, it was finally sold to the defendant James T. Williams for $15,000, who complied with the terms of sale, and obtained possession and title to the property on August 3, 1896. The bill alleges that the purchase, although nominally made by James T. Williams, was really made for the complainant, Jack, together with said Williams and said Beattie, and the purchase money was supplied by all three, under an agreement that the property should be conveyed to Williams for the benefit of all three. The bill alleges that it had been found impossible to operate the road except at a loss; that the condition of the roadbed and bridges was such that it would cost $10,000 to make it safe to use it; that the citizens along the line of the railroad had been appealed to in vain for assistance to operate it; and that when it was operated the citizens along the line did not use it. The bill

further recites that an act of the legislature of South Carolina had then recently been passed, approved March 5, 1897, requiring all owners of railroads to reorganize under section 1610 of the Revised Statutes of South Carolina within 60 days, under a penalty of $50 a day and a forfeiture of their franchises and privileges for neglecting to do so; that it would be impossible for the complainant and his co-owners to comply with said act, as it would be attempting a thing almost impossible and certain of failure. The bill then prayed an order appointing a receiver, and a decree for sale and partition. The defendants, by answer, admitted the allegations of the bill, and submitted to a decree.

The court below thereupon appointed a receiver, who had an inspection of the property made by a skilled railroad supervisor, who reported that there were 22 trestles, and that all but 2 of them needed extensive repairs; that there were over 12,000 new cross-ties required; and that in over 20 places the roadbed for considerable distances was covered with dirt 2 feet deep; and that it would cost over $10,000 to put the road in proper condition to run for one year. Thereupon the court (Judge Simonton), on May 18, 1897, filed its opinion and decree, adjudging that the complainant was entitled to the relief prayed in the bill, and directed the receiver to remove all the iron rails, and to sell them, together with all the rolling stock, and, after paying the costs, and such compensation as might be agreed to by the parties, and, after setting aside the $2,000 for a purpose hereinafter explained, directed the receiver to pay the remainder of the proceeds to the parties according to their respective interests as they should appear by a written agreement to be signed by them and filed with the clerk. The court (Judge Simonton) held that as the state of South Carolina might charter a new corporation, and confer upon it a franchise similar to that which the Carolina, Knoxville & Western Railway Company had possessed to construct and operate a railroad over the same route, and might authorize the new corporation to take such of the railroad property of the old corporation as might be necessary for its use, upon paying proper compensation therefor, some provision should be made in its decree for that contingency. And the court held that, as the new corporation would be required to pay the present owners the value of the rails and other property taken, the only damage it could suffer by their removal would be the cost of replacing them, and that $2,000 would be sufficient to cover that cost, and directed the receiver to reserve and deposit that sum in some savings institution of the state, in order that it might be paid to such new corporation if chartered within a period of two years. The receiver, nearly two years afterwards, on March 7, 1899, filed a report in which he reported to the court that he had not yet complied with the decree of May 18, 1897, directing him to remove the iron from the roadbed, but had delayed at the urgent request of the parties in interest, who had been making every effort to avoid the necessity of dismantling the road, but that all their efforts had failed. He thereupon asked authority to contract with a proper person, upon the terms stated in his petition, to remove all the iron from the roadbed and all other movable property, and deliver it at the Southern Railroad freight depot in the city of Greenville. The court entered an order giving the authority.

On March 27, 1899, two petitions by new parties were filed in the cause. The first was by the state of South Carolina, ex relatione T. B. Cunningham and others. It set out that the relators were citizens of South Carolina, residing in the county through which the railroad passed, who, having established themselves in business while the railroad was in operation, depended upon it for transportation, and would be seriously injured if the railroad was discontinued and abandoned, and the people of that section of the country would suffer hardship and incalculable loss. They stated that neither the state of South Carolina nor the relators knew anything of the proceedings in this cause until on March 17, 1899, when the receiver by his agents began to take up the rails; that the relators were advised that the said railroad, so far as completed, was a public highway, authorized by the legislature of South Carolina; and that neither the parties to the cause nor the receiver had power to take up the rails and dismantle the railroad without the authority and consent of the legislature of South Carolina. The petitioners

asked that they be allowed to intervene, and have their rights and the rights of the state adjudicated; that the parties to the cause be required to answer their petition; that the parties to the cause and the receiver be enjoined from removing the rails or dismantling the railroad; and that the parties to the cause be required to replace the rails already removed. Thereupon the court set the matter of the petition for hearing, and ordered that in the meantime the parties to the cause and the receiver be restrained from further proceeding to remove the rails, provided the relators should give a bond in the penalty of $5,000 to answer any damages by reason of the restraining order. At this time the rails on about one mile of the road had been taken up. The bond required to make the restraining order effective was not given, and the receiver continued to take up the rails, and on April 21, 1899, reported to the court that he had sold and delivered all the property which he had been authorized to sell by the decree of May 18, 1897, to the Charleston· & Western Carolina Railway Company, for $28,000, the purchaser to pay `the cost of removing the rails. That he had deposited as directed the $2,000 required by the decree to be reserved, and had paid the expenses of the receivership, and distributed and paid to the parties to the suit, according to an agreement of division signed by the parties, the net amount coming to each; and he filed their receipts for the payments. Another petition was also filed March 28, 1899, by John T. Bramlett and N. J. Bramlett, claiming title to a strip of land which had been used as a part of its roadbed by the Carolina, Knoxville & Western Railway as constructed, and asserting that the land had reverted to the petitioners free from said right of way by reason of the forfeiture of the rights and franchises of the railroad company, and that all the iron rails, cross-ties, and other property thereon had reverted to the petitioners with said land, and they prayed an injunction to prevent the parties to the cause from removing the aforesaid rails, cross-ties, and other property. To this petition there was a demurrer and an answer, and on April 26, 1899, the court passed an order granting the petitioners leave to intervene, with leave to apply for a rehearing or review of any order theretofore made in the cause, and further ordered that the receiver hold all the property then remaining in his hands subject to the further order of the court.

To the petition of the state of South Carolina, ex relatione Cunningham and others, the parties to the original cause and the receiver filed their answer, April 26, 1899. They denied the right of the petitioners to intervene, and informed the court that under its previous orders the rails and other property had been removed, sold, and delivered, and the purchase money paid and distributed; that the rails could not be replaced; and that the petitioners had not shown that there was any probability of the road being operated if the rails could be replaced. The answer then recited the proceedings in the case, and claimed that the decree of May 18, 1897, directing the receiver to dismantle the road and sell all the removable property, was final, and could not be opened upon petition filed after the term. The court, by its order entered April 26, 1899, gave leave to Cunningham and the other petitioners, on behalf of the state of South Carolina, to intervene, and to apply for a rehearing or review of any order or decree made in the cause; and further ordered "that the complainant, D. F. Jack, and the defendants James T. Williams and H.·C. Beattie, do file with the clerk of the court within twenty days from the date of the order a bond in the sum of $25,000, with good and sufficient sureties to be approved by the clerk, and conditioned for their compliance, respectively, with any order or orders that may be granted by the court as to the funds heretofore paid to the parties, respectively, by the receiver ·W. C. Cochrane, Esq., and arising from the sale of rails taken from the roadbed of the Carolina, Knoxville & Western Railway." And it was further ordered that the order theretofore granted allowing the dismantling of the railroad be modified by requiring the receiver to hold all the property then in his hands subject to further order of the court. To this order last above recited, and to the ruling of the court overruling the demurrers to both the foregoing petitions, the appellants, Jack, Williams, and Beattie, have appealed, and the appellees have moved to dismiss the appeal.

T. P. Cothran, B. A. Hagood, and M. F. Ansel, for appellants.

Joseph W. Barnwell and Julius H. Heyward (B. M. Shuman, on the brief), for appellees.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, District Judges.

MORRIS, District Judge (after stating the facts as above). At the threshold of this appeal is the question whether the order of April 26, 1899, overruling the demurrer to the petition, and allowing Cunningham and others, in behalf of the state of South Carolina, to intervene, and requiring Jack, Williams, and Beattie to give bond in the penalty of $25,000 to comply with the future order of the court with regard to the proceeds of the rails received by them, is appealable. In argument the ground principally relied upon to support the right to appeal from this order, which decides no right and is in its nature interlocutory, is based upon the act of February 18, 1895, allowing an appeal from any interlocutory order or decree granting, continuing, refusing, dissolving, or refusing to dissolve an injunction. It is argued that the petitioners asked in their petition that the original parties to the cause and the receiver should be perpetually enjoined from taking up and removing the rails, and that a temporary restraining order be granted until the further order of the court, and that the parties be required to replace the rails already removed; that the prayer for a temporary injunction was granted conditioned upon the execution of a bond for $5,000; that the petitioners failed to give the bond, and thereupon the order for a temporary injunction became inoperative, and the receiver proceeded to execute the original decree of the court; that when on April 26, 1899, the petitioners again invoked the action of the court, the rails had been removed and sold, and the money distributed to the parties to the original cause; that there was then nothing that a formal restraining injunction could accomplish, but that the court indirectly accomplished the same result as was sought by the petitioners in their original petition by requiring the appellants to give a bond to return the money so received, if ordered by any further order of the court; and that it was equivalent to an injunction, in that the order commanded the appellants to do a specified act.

The United States supreme court had occasion to consider a quite similar question in Highland Ave. & B. R. Co. v. Columbian Equipment Co., 168 U. S. 628, 18 Sup. Ct. 240, 42 L. Ed. 627. Mr. Justice Brewer, speaking for the court, thus states the question which that court was called upon to determine:

"Is an interlocutory order appointing a receiver appealable from the circuit court to the circuit court of appeals, and if such an order, standing alone, be not appealable, does it become so by the incorporation into it of a direction to the defendant, its officers, directors, agents, and employés, to turn over and deliver the property in their hands? These questions must be determined by a consideration of section 7, c. 517, Act March 3, 1891, creating the circuit court of appeals (26 Stat. 826), as amended February 18, 1895, c. 96 (28 Stat. 666)."

The opinion then comments upon Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, and In re Tampa Suburban R. Co., 168 U. S. 583, 18 Sup. Ct. 177, 42 L. Ed. 589, and continues:

"But each of those cases proceeded upon the fact that there was a distinct order granting, continuing, or dissolving an injunction. In the case at bar there is no such order. It is true, following the order of appointment, there is a direction to the defendant, its officers, directors, and agents, to turn over to Campbell the property of which he is appointed receiver, but that is only incidental and ancillary to the receivership. * * * Indeed, the mere appointment of a receiver carries with it the duty on his part of taking possession, and the further duty of those in possession of yielding such possession. So that as a part of an order appointing a receiver there is something in the nature of a mandatory injunction,—that is, a command to the receiver to take, and to the defendant to surrender, possession; yet such command is not technically and strictly an order of injunction."

And, in conclusion, the opinion declares:

"It would savor of judicial legislation to hold that, although congress has not authorized appeals from orders appointing receivers, the mere fact that in such an order there is a direction of a mandatory character, either expressed or implied, in respect to taking possession, makes it appealable as an order granting an injunction."

The considerations which governed the supreme court in deciding in the foregoing case that the order appointing a receiver, embracing, as it did, within its terms a direction to the defendant in the nature of a mandatory injunction, was not the equivalent of a technical injunction, are, it seems to us, entirely applicable to the present case. The order of the court below overruled the demurrer, and granted the appellees leave to intervene and to move for a rehearing or review of any order or decree made in the cause, and suspended the order theretofore granted allowing the dismantling of the road, and directed the receiver to hold all the property left in his hands until further order, and, in addition, required the parties to the original cause to give bond to comply with any further order with regard to the funds already paid them by the receiver.

Applying the rules of the supreme court above cited, we do not find in the order requiring the parties to the original cause to give bond anything to which the act of February 18, 1895, allowing appeals from orders granting injunctions, is applicable. It may perhaps be said, as all that the receiver and the original parties had done had been by direction and under the authority of the decrees and orders of the court, and after long delays, and after the petitioning interveners had neglected to give the bond required of them as a condition of their obtaining the injunction they had prayed for, that the order requiring the original parties to give the $25,000 bond, when they were not actors and were asking nothing, is to be regarded, under the circumstances, as an extreme exercise of judicial power. But it does not appear that if the parties affected by the order had represented to the court that the exaction of the bond would result in hardship it would have been insisted upon. At any rate, nothing was done by way of penalty, and the matter is not now before us, for the reason that we are of opinion that the appeal was taken prematurely. Appeal dismissed for want of jurisdiction.